178 So. 543

TUSCALOOSA COUNTY v. WALKER et al.

6 Div. 263.

Supreme Court of Alabama.

Jan. 27, 1938.

Foster, Rice & Foster and Hyman Rosenfeld, all of Tuscaloosa, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for appellees-interveners.

GARDNER, Justice.

Under the provisions of section 21 of the Sales Tax Act, General Acts, Special Session, 1936–37, pp. 125, 138, a definite portion of the revenue derived therefrom is allocated to the several counties of the state, and the proper expenditure of these funds is the question presented 'on this appeal. The above-noted section, in part, reads as follows:

"One-half of said proceeds shall be divided ,and distributed proportionately among the sixty-seven counties of the State according to the population of the said counties as shown by the last Federal Census; and one-half of said proceeds shall be divided or distributed equally among the sixty-seven counties; provided that the funds divided and distributed to the several counties of the State as hereinabove provided for shall be used exclusively for full-time health service in cooperation with the State Board of Health and/or the Federal Government; for public welfare in cooperation with the State Department of Public Welfare and/or the Federal Government; and for extension services in cooperation with the Alabama Agricultural Extension Service and/or the Federal Government, at the discretion of the Commissioners Court, Boards of Revenue, or other governing bodies of the several counties of the State."

Tuscaloosa county's board of revenue insists that it is not only the prerogative of the county to determine the purposes for which these funds shall be expended, that is, public health service, public welfare, or extension service, but that the county'has also the right to determine for itself whether or not the expenditures are "in co-operation with" the various state and federal government agencies named in said section of the act.

In effect, the contention is that the county may determine how the funds so allocated to it shall be expended without recourse to the state or federal authorities, and without subjecting the county to the supervision of the designated organizations, rested in the main upon the concluding language of the section: "At the discretion of the Commissioners Court, Boards of Revenue, or other governing bodies of the several counties of the State."

But the chancellor decreed otherwise, and we think correctly so.

The county's contention gives entirely too much scope to the concluding words above quoted, and ignores the express language in the section to the effect that these funds shall be expended exclusively for the purposes therein designated "in co-operation with" the appropriate state or federal agencies therein named. Accepting the insistence of the county in this case would leave little, if any, room for application of the very definite word "co-operation," which is derived from two words "co" and "operate," meaning to work together. As defined in Webster's New International Dictionary, "co-operation" means "to act or operate jointly with another or others; to concur in action, effort or effect."

The governmental agencies named in this section, with which co-operation in the expenditures is required, are well known, each having a wide and useful field of operation. As to the matter of public health, we have recently had occasion to comment upon the well-known fact "that the health and welfare of the people have been greatly advanced by the conscientious and intelligent labor of the scientists and members of the medical profession," and the great benefit derived, not only in curing diseases and alleviating suffering, but also in the use of preventive means in anticipation of danger of an epidemic. Gilchrist Drug Co. v. City of Birmingham, 234 Ala. 204, 174 So. 609, 612, 111 A.L.R. 103.

All official health service in this state is rendered through and under the direction of the state department of public health, and all funds expended with an annual budget prepared by the state health officer, with the approval of the state board of health. Gen. Acts 1935, p. 771. In the final analysis, therefore, the larger responsibility rests upon the state health officer for the wise expenditure of funds, both state and federal, specially appropriated or allotted for public health work.

Likewise, the state department of public welfare is recognized by the lawmaking body as meeting an important need, and given a wide field of labor. In section 8 of the Public Welfare Act, General Acts 1935, p. 762, 765, it is stated that the "aim of the State Department shall be the promotion of a unified development of the Welfare activities and agencies of the State and of the local governments, so that each agency and each governmental institution shall function as an integral part of a general system."

In detail manner in this section the powers and duties of the state department of public welfare are set forth, and the state department is authorized to designate county departments as its agents, and in section 5 of the act the state department is given authority to decide with reference to "the use of grants-in-aid, to County Departments," and in section 8 the state department is made the agent of the federal government in "welfare matters of mutual concern," and the administration of federal funds.

And our Legislature has made provision as to the matter of "matching" federal funds for old age pensions, General Acts, Sp.Sess.1936–37, p. 158, aid to dependent children families, Gen.Acts 1935, p. 1061, and to the blind, Gen.Acts, Sp.Sess.1936–37, p. 101. For appropriations, see General Acts, Sp.Sess.1936–37, p. 158, also pages 103, 203, and 40, Id.

Our Legislature has likewise given recognition to the wide field for useful service of the Alabama Agricultural Extension Service, in very large part financed by the federal government, and in co-operation therewith, and with the declared purpose of securing for this state the full amount of all federal funds conditionally appropriated, made a large appropriation therefor. General Acts 1936–37, Sp.Sess. p. 15. And the Federal Smith-Lever Act, U.S.C.A. title 7, §§ 341–348, defines this co-operative agricultural extension work.

But the foregoing general observation of these several departments will suffice as a background for a proper interpretation of section 21 of the Sales Tax Act here considered.

Each of these governmental agencies has its official head with its trained and experienced personnel to carry on the work and efficiently perform the functions of their several departments. In the matter of the wise and proper expenditure of funds under their control, or subject to be expended under their direction, the lawmakers evidently considered that these experienced officials and their subordinates could more nearly best determine for the general good than could others not so trained and experienced.

Clearly, therefore, when the Legislature, in section 21, supra, speaks of expenditure of these funds in co-operation with the county authority, it was not meant

that the latter could exercise its own discretion as to the wisdom of such expenditures, and its own judgment as to what in fact was embraced within the influence of the activities of these various governmental agencies. We think the discretion referred to as resting in the county authority was the ascertainment of the purpose or purposes for which the funds were to be expended.

Thus the county maintains its own initiative and autonomy in determining the purpose or purposes for which the money is to be expended. But we think it equally clear that it was the legislative intent that these state agencies were to exercise their judgment as to whether or not the expenditures were within the meaning of the terms "public health," "public welfare," and "agricultural extension service."

There is no just criticism that such construction gives the state control of county funds, but it merely places upon the county restraint of a guiding hand trained and experienced, concerning the funds the state has allocated to the counties for definite purposes.

We find ourselves in full accord with the decree rendered, which for a better understanding, may well be set out in the report of the case.

It results, therefore, that the decree rendered is due to be affirmed, and it is so ordered.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.